We'll move now to our last case orally argued this morning. This is Appeal 24-2473, Weinhaus v. Scannicchio, and Mr. Florek will begin with you for oral Good morning, Your Honors. My name is Adam Florek, and I'm here on behalf of the Plaintiff Appellant, Mr. Weinhaus. May it please the Court, this report aired when it concluded it was unable to exercise original jurisdiction over Mr. Weinhaus' constitutional claims, finding instead they would have to review and reject the State Court decision to do so. Had the Court considered the four factors articulated by Exxon and examined by this Court in the Gillbank case, it would have concluded that neither the third or fourth element are present. Mr. Weinhaus was not injured by the State Court order below, nor did his amended complaint seek to disturb or otherwise modify that decision. Here, Mr. Weinhaus was injured by the intentional interference of his due process and equal protection rights by the defendants, all of which was conduct that occurred prior to any State Court decision. Moreover, the case, the federal case, articulating his amended complaint, sought compensation for the violation of his equal protection and due process rights. Nothing. Can I ask you a question? Is there a judicial immunity problem here? I don't believe so, Your Honor. Why not? Your Honor, Judge Scaniccio was not acting in any judicial capacity, nor was the Illinois Judges Association. They were... Is that under Illinois law, that she was not acting in an official judicial capacity? In other words, when was the case in the trial court, when was she divested of jurisdiction? Your Honor, once the case was on appeal, she was no longer acting in a judicial capacity. Is that based on Illinois procedural law or Illinois statutory law? What's the basis of that law? I believe it's Illinois procedural law. I don't have specific statutory cases. If she was, though, if she did have jurisdiction at the time the comments were made, would you have a judicial immunity problem? I haven't briefed that issue, Your Honor. I'd have to look into it. Here, the offending conduct, the conduct that gave rise to Mr. Winehouse's injury, was the acts to deprive him of his civil rights, his equal protection and due process rights, all of which occurred before the Illinois District Court, sua sponte, dismissed his appeal. And the conduct alleged in the amended complaint shows this conduct occurred before any state court decision was rendered. In Gilbank, the court discontinued its inextricably intertwined analysis and instead looked at where the conduct arose. Here that conduct, I'm sorry, here the injury plainly arises from conduct that preceded that state court injury. Next, nothing in the amended complaint seeks to modify or otherwise disturb the Illinois District Court's dismissal of his appeal. The dismissal of Mr. Winehouse's appeal, or I'm sorry, Mr. Winehouse's appeal originally sought a review of a fee award. Once that appeal was dismissed, this separate federal suit seeks vindication of his constitutional rights and damages as a result thereof. The key Rooker-Feldman question is, does defendant's federal suit seek to disturb or otherwise overturn the state court decision? Here that is simply not the case. Nothing the amended complaint asked for, nor the court, nor anything the court would be empowered to do would disturb that finding. Moreover, none of the parties to that original state court proceeding are named herein. Mr. Florek, can you set aside Rooker-Feldman for a second and just put that issue to the  I have a question about the adequacy of the pleading in the first amended complaint. How are the allegations against the Cook County judge that's named as a defendant, how are they adequately pled, especially when you think about the Twombly-Iqbal plausibility standard? And the reason I'm asking you that question is because when you look at the first amended complaint, paragraphs 30 and 31 are where the allegations are really made against the Cook County trial judge, and they're made upon information and belief. They're not accompanied by any factual allegations that I can see. Your Honor, my understanding is the Iqbal-Twombly standard is a notice pleading standard, such that they have to provide the defendant notice, adequate notice, so that they can prepare and respond. It's got to be, they got to be plausible allegations. I really wonder whether this is on its face implausible. Your Honor, I don't believe that question is before the court here, but still I believe they do provide notice, and I do believe that there is a discussion of her conduct in furtherance of the conspirator's conduct alleged. The deprivation of the rights, the intent to interfere with Mr. Winehouse's appeal. Beyond her being a member of the association along with the appellate judges? I'm sorry, Your Honor, I don't have the amended complaint in front of me, but I believe it also discusses her conduct and her discussion of the case with various members of the judiciary. And the Illinois Judges Association? Yeah, that's, I don't really see that, but I mean, you have a minute or so on rebuttal, you can look for it, but. Your Honor, if there are no further questions, I'd like to reserve the remainder of my time for the rebuttal. Very good. Thank you, Mr. Florek. Ms. Shrove will move to you now for the oral argument on behalf of the appellate. Thank you. Good morning, Your Honors, and may it please the Court. My name is Alexandrina Shrove, Assistant Attorney General, on behalf of Defendant Apolli, the Honorable Regina A. Skinikia. The Rooker-Feldman Doctrine bars claims brought by a state court loser complaining of injuries caused by a state court judgment rendered before the district court proceedings began and which invite the federal court to review and reject that judgment. Winehouse's complaint here falls squarely under the Rooker-Feldman Doctrine, and this court should affirm the district court's dismissal of his complaint for three reasons. First, Winehouse's alleged injury resulted from the Illinois appellate court's dismissal of his appeal. Second, awarding Winehouse relief would nullify or modify that state court judgment because he sought damages to offset the attorney's fees and costs that he was awarded to pay. And third, nothing prevented Winehouse from raising his claims in his state court proceedings. Does the fact that he's seeking damages against different parties have any effect on the disturbing judgment element of Rooker-Feldman? In other words, he's not seeking a reimbursement. He's clearly seeking the $25,000 back, but he's not seeking it from his ex-wife. He's seeking it from the judge. No, Your Honor, it doesn't. Winehouse has claimed that he lacked the opportunity to raise his claims in the state court proceedings because Judge Skenogio was not a party to those underlying proceedings. But this court, in its Bauer v. Koster decision, already rejected that same argument, stating that whether any defendant was a party to the state court action is a consideration under the doctrine of claim preclusion, not Rooker-Feldman. Winehouse has not otherwise identified any state law or procedural mechanism that prevented him from raising Judge Skenogio's alleged misconduct as a basis for the Illinois courts to reverse the dismissal. Now, turning back to my first point, Winehouse's alleged injury underlying his federal claims were caused by the Illinois appellate court's dismissal of his appeal. In his amended complaint, Winehouse alleged that Judge Skenogio interfered with his appeal by communicating with the appellate court panel. According to him, this interference deprived him of his constitutional rights to an impartial judiciary. Thus, his injury resulted from the appellate court's dismissal because, absent that dismissal, he would not have had any cognizable injury as a result of the alleged interference. Judge Skenogio's alleged interference would have been harmless had the appellate court case gone his way and not been dismissed. Much like this court's decision in Bauer, where the defendants needed to prevail in the state court to effectuate their alleged fraud, here it was only after the appellate court's dismissal that Winehouse's alleged injury, the deprivation of his right to an impartial judiciary, became effectuated. Now, he's maintained on appeal that his injury was the product of Judge Skenogio's extrajudicial conduct and, therefore, it was independent of the state court judgment. But Winehouse has alleged that Judge Skenogio's conduct deprived him of his constitutional right to an impartial judiciary by communicating with the appellate court panel. Therefore, the state court judgment itself is the injury. Because only after the appellate court dismissed his appeal did the ramifications of the alleged misconduct come to pass. It's for these reasons that Winehouse's injury was caused by the appellate court's dismissal. I understand why the defendants and the Attorney General's office would prefer a subject matter jurisdiction dismissal over a merits dismissal. You'd want that eight days a week, probably. But do you have a view on whether this complaint is adequately pled under the federal rules and civil procedure? Your Honor, that was not an argument that was presented on appeal or argued below. Judge Skenogio did not file any pleadings before the district court, so on appeal we were limited to the Rooker-Feldman jurisdictional argument. I mean, there's clearly a conclusion stated that the plaintiff believes the Cook County judge interfered, but it's stated on information and belief. I don't see anything supporting it. I would agree with you, Your Honor, that the complaint is not supported by any factual assertions made attached to the complaint, but unfortunately that was not part of the argument either below or on appeal. So the arguments on behalf of Judge Skenogio were limited to the jurisdictional arguments. Okay, thanks. Now, turning briefly to my second point that Winehouse's complaint sought review and rejection of the state court judgment because he has effectively asked for a refund of the attorney's fees and costs that he was ordered to pay. Has he, though? That's my question. Has he asked for a refund? He's asking for a third party to pay. He doesn't want a refund from his ex-wife. He wants payment from the judge. Your Honor, under this court's language in its recent en banc decision in Gilbank v. Wood County Department of Human Services, this court clarified that where the state court judgment sounded in monetary relief, a plaintiff repairing to federal court pursuing a refund or adjustment, so either a refund or an adjustment of the sum assessed against him could be seeking review and rejection of that judgment because the relief sought would nullify or modify the judgment. And that's precisely what Winehouse's complaint seeks here. Winehouse's state court appeal stemmed from the $25,000 judgment against him for attorney's fees and costs. And in his complaint, he has specifically alleged that he had to pay tens of thousands of dollars in fees and costs that he had incurred, including attorney's fees, as a result of the appeal's dismissal. He is essentially seeking a refund, whether it be from his ex-wife or from the judge here, to modify. But the ex-wife has nothing to do with this lawsuit. Correct. He's not seeking anything from her. In essence, he is seeking a monetary judgment from the federal court to nullify or modify or void that monetary judgment that was against him in the state court. That's precisely what this court extrapolated on in its Gill Bank decision. When you have a state court judgment that sounds in monetary relief, here there was a state court judgment against Mr. Winehouse for $25,000. And when that party comes into federal court pursuing a refund or adjustment of the sum assessed against him, he's seeking to nullify or modify that judgment. That is what the review and rejection element of the ExxonMobil Rooker-Feldman test calls into question. Here, Mr. Winehouse's complaint seeking monetary damages falls squarely within the Rooker-Feldman scenario contemplated by this court in its Gill Bank decision. Now finally, under this court's additional Rooker-Feldman element, Winehouse had a reasonable opportunity to raise his claims in his state court proceedings because there was no Illinois law or procedural mechanism that prevented him from doing so. He could have sought reconsideration of his dismissal in the appellate court. He could have sought recusal of the allegedly biased judges from the Illinois appellate court panel. Nothing prevented him from raising in his Illinois Supreme Court petition for leave to appeal to reverse the dismissal based on the alleged misconduct of Judge Schenekio. And when the Illinois Supreme Court denied his petition for leave to appeal, he also could have sought reconsideration of that. And ultimately, he could have also filed a petition for certiorari with the United States Supreme Court seeking review of his case. But he did none of those things, despite his ability to do so. If there are no further questions, Judge Schenekio would respectfully request that you affirm the dismissal of Winehouse's complaint. Am I right that the Judges Association is part of the appeal too? Correct, Your Honor. So, okay. They filed a brief in this appeal, but have not chosen to argue before this court. Okay, thanks. Thank you. Thank you, Ms. Shrove. Mr. Florek, we'll move now back to you for rebuttal argument. Your Honor. Your Honors, I'm sorry. Ms. Shrove addressed a number of issues. I'd like to start with her last one, the fifth element, which this court in Gilbank filed as a relief valve. And in that decision, it discussed the fifth element or the release valve being necessary with respect to the case.  I'm sorry, but a party had no opportunity to raise those issues at the trial court. I respectfully submit that that release valve isn't necessary here because there is no Brooker Feldman denial. If there were, the question would be whether or not Mr. Winehouse had an opportunity to raise his constitutional claims during those state court proceedings. I respectfully submit he was not able to raise those claims during the state court proceedings. As the record shows, I believe his divorce decree was entered in 2015. In the intervening eight years, there was various post-decree issues. When the appeal was ultimately dismissed for a fee award, or I'm sorry, when his appeal of a fee award was ultimately dismissed, instituting constitutional claims against third parties would have required him to file a new lawsuit in the state court. Hold on. He couldn't have gone – is it your perspective that he could not have invoked Illinois law, went back to the Illinois courts and said, yes, there was a judgment entered against me, it was a while ago, but I now have definitive proof, in my view, that that judgment is the product of corruption? Your Honor, if you wish to – There's no vehicle in Illinois law for that? I can't speak to the specifics of Illinois law, but if you wish to challenge the decision below, or I'm sorry, the decision at the state court, which is not what this lawsuit at the federal court seeks to do, if you wish to challenge that, I believe, again, not speaking for myself. Yeah, no, that's a separate point, but from other cases that we've had, I've been under the pretty strong impression that if a party actually realizes that there's a structural problem with a prior judgment, for example, judicial bias, corruption, that state law does provide an opportunity for it. You've got to prove it. It provides an opportunity for you to go back. Yes, Your Honor, I believe you can attack a decision based on those issues, but I believe here there are separate constitutional claims not present and at no point addressed at the state court, and I believe that's what the Gill Bank release valve fifth element requires. As for whether or not this injury results from a state court decision, it's our contention that the injury resulted from the preceding conduct. The allegations, or I'm sorry, the acts and conspiracy of Judge Scaniccio and the Illinois Judges Association, I believe they're mentioned briefly in paragraphs 25 through 29 when she became aware of a media complaint. Mr. Winehouse, or I'm sorry, a media investigation Mr. Winehouse was involved in following a decision in Missouri, in the federal district court in Missouri. She began to discuss him, his appeal with various members of the panel in an extrajudicial capacity, but our contention is the injury results from that conduct, not the state court decision, and I think the Seventh Circuit decision in Kowalski v. Bollinger is informative. There, a state court loser instituted a lawsuit against an Illinois judge who was not a judge on his case and instead was styled as his wife's best friend forever, who had essentially, like here, poisoned the well and engaged in extrajudicial conduct to interfere with Mr. Kowalski's rights. And I think that's important because there, like here, nothing requires you to review and overturn or otherwise disturb a state court decision. Instead, it does look to the source of those damages. And here, the source of the underlying damages is the extrajudicial conduct of the defendants. Thank you, Mr. Florek. Thank you, Ms. Schro. The case will be taken under advisement. That completes our oral arguments for today.